UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
Matchroom Boxing Limited; and
Edward John Hearn,                                               Civil Action No.: 1:22-cv-08178-PGG

      *Plaintiffs*, and

Glenn Feldman,                                                        **COMPLAINT**

      *Proposed Plaintiff-Intervenor*

   — against —                                                **Jury Trial Demanded**

Jake Paul,

      *Defendant*.
--------------------------------------------------------X

Proposed Plaintiff-Intervenor, Glenn Feldman ("Feldman"), by his attorneys Salzano, Lampert & Wilson LLP, alleges as follows:

## NATURE OF THE ACTION

1. For a judge, a reputation of objectivity and integrity is everything.

2. Feldman has been a world-renowned boxing judge for over three decades, having been a judge for both the Nevada and New York Athletic Commissions for over twenty years. Since his boxing judge career began in 1992, Feldman has worked tirelessly to build his reputation as an objective judge that scores fights fairly and squarely in line with the rules and guidelines of the boxing profession. His long record of objectivity and fairness is recognized throughout the boxing profession.

3. Throughout his career, which remains active, Feldman has been a judge in over 1,200 boxing matches in venues across the globe, including some of the most highly-anticipated and highly-publicized bouts in the history of the sport.

1

4.   Defendant Jake Paul ("Paul" or "Defendant") has earned tens of millions of dollars as a social media influencer, boxer, and boxing promoter. He is frequently interviewed by the media and is well-known in the boxing profession and mainstream media. Defendant also maintains a substantial following on social media, with approximately 20.7 million followers on Instagram, 20.4 million subscribers on YouTube, 16.6 million followers on TikTok, 5.7 million followers on Facebook, and 4.4 million followers on Twitter.[1]

5.   In light of his substantial following, when Defendant speaks, boxing fans, media, and the boxing profession listen. The spoken and written words of the Defendant are inevitably spread globally with the potential to harm the reputation of any individual or entity.

6.   Although playful banter and even smack talk is common in the boxing profession, Defendant's recent, outlandishly false and baseless accusations against Feldman and Matchroom Boxing ("Matchroom"), which are detailed herein, crossed far past the line of banter, and clearly constitute defamation.

7.   On or around September 20, 2022, Defendant made outrageously false and baseless accusations against Feldman and Matchroom in a video that was posted online and made available free of charge to anyone across the world.[2] Defendant claimed—without a shred of evidence to substantiate his claims—that Matchroom paid off Feldman to score the recent bout, held in August 2022, between Oleksandr Usyk ("Usyk") and Anthony Joshua ("Joshua") in Saudi Arabia, and that Matchroom also paid off Feldman to score a separate bout between Katie Taylor ("Taylor")

---

[1] The earnings and social media data are sourced from: (1) Daniel Yanofsky, *Jake Paul Net Worth*, The Sporting News, July 26, 2022, *available at* https://www.sportingnews.com/us/boxing/news/jake-paul-net-worth-purse-history-career-earnings-youtube-boxing/htcxfgjhd7mmshflxcjguvlx; (2) Twitter, Sept. 21, 2022, https://twitter.com/jakepaul?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor; and (3) Instagram, Sept. 21, 2022, https://www.instagram.com/jakepaul/?hl=en.

[2] A video recording of Defendant's statements are incorporated herein by reference, and available at: https://twitter.com/ifltv/status/1572337128515993600?s=46&t=Iv4jr1LmoaHVwYJ4Ke6E8g. And, a transcript of the most pertinent aspects of Defendant's statements is attached hereto as Exhibit A.

and Amanda Serrano ("Serrano") in April 2022 that was held at Madison Square Garden in New York City. Defendant further stated that, because of Matchroom's bribes, Feldman scored in favor of Joshua and Taylor respectively. Matchroom was the promoter for both Joshua and Taylor, with Taylor securing a split decision victory over Serrano and Joshua losing by split decision to Usyk. Defendant was and remains the promoter of Serrano.

8. Specifically, on or around September 20, 2022, Defendant stated: "Glenn Feldman shows up in Saudi and scores Anthony Joshua to win the fight when everyone who watched the fight saw it's not a split decision, Usyk had a runaway victory, clearly won the fight, and this judge Glenn Feldman gives it to Anthony Joshua. It's like a repeated crime here. This type of shit, I'm going to call it out in boxing, because it's bullshit. Clearly this guy is getting paid money by Matchroom Boxing." *See supra* note 2. At the time he made the statement, Defendant recognized the enormity of his proclamation against Feldman and Matchroom: "that's a bold statement and an accusation that I don't take lightly, but it's just so blatantly obvious and they're not even trying to hide it. You'd think they would try to get a different judge that fucked up the scoring from Taylor-Serrano." *Id*. Defendant went even further in his false and baseless claims against Feldman and Matchroom, stating: "you'd think they would try to get a different judge to try and hide the corruption that they are bringing to this sport but it's just so blatantly obvious." *Id*. Defendant likewise stated that Feldman and Matchroom have engaged in "a repeated crime." *Id*.

9. Thus, not only did Feldman and Matchroom recognize that Defendant's statements crossed the line from banter and clearly amount to defamation, Defendant himself, at the time he made the false and baseless statements, explicitly acknowledged that his accusations were "bold."

10. Such accusations are obviously deeply offensive as well as damaging to Feldman and Matchroom. They are also patently false. As Defendant should be aware (given his own

3

activities as a boxing promoter), the applicable boxing commission, i.e., the Middle Eastern Professional Boxing Commission for the bout between Usyk and Joshua, and the New York State Athletic Commission for the bout between Taylor and Serrano – not the promoter of the bouts – is responsible for choosing the judges. Therefore, by definition, Matchroom could not have appointed Feldman as Defendant insinuated. Furthermore, it is worth noting that: *(i)* the majority of media concurred with Feldman's scorecard in respect of the Taylor bout and many remarked on the remarkable achievement of both fighters in what was deemed a closely contested "fight of the year" candidate;[3] and *(ii)* Edward Hearn (Matchroom's CEO) publicly disagreed with Feldman's scorecard in the Usyk-Joshua bout, stating that he believed Usyk won the fight.[4]

11. Defendant's wild accusations against Feldman and Matchroom caused a media and social media frenzy, undoubtedly exacerbated by Defendant's enormous social media following.

12. Within 24 hours of Defendant's false statements, several news and social media sites replayed Defendant's false and accusatory statements, while others wrote about Defendant's claims regarding Feldman and Matchroom.

13. Media characterized Defendant's statements as "damning accusations" against Feldman and Matchroom and "EXTREMELY STRONG ACCUSATIONS" against Feldman and Matchroom (emphasis in the original). *See infra* ¶¶ 40-46.

14. The media blitz has continued up to the filing of this complaint, and is likely to continue into the foreseeable future. Given Defendant's far-reaching social media presence, his statements have reached tens of millions of individuals across the globe.

---

[3] *See e.g.,* https://www.sportingnews.com/us/boxing/news/katie-taylor-vs-amanda-serrano-live-results-highlights/hat68l72vmsni1aho04bam7v.

[4] *See e.g.,* https://www.boxingscene.com/hearn-i-usyk-winning-115-113-what-he-tenth-round-unbelievable--168514.

15. Defendant's defamatory statements were made with malicious intent and have caused financial and reputational harm to Feldman and Matchroom, which is precisely what Defendant intended when he made the outlandish accusations.

16. Indeed, since the date of Defendant's defamatory statements and up to the filing of this complaint, Feldman has not been invited to judge a single boxing match.

17. Following Defendant's explosive and unfounded statements, Matchroom representatives contacted Defendant through his agent, and urged Defendant to retract the false accusations. Defendant refused to comply with the request, thus doubling-down on his malicious and defamatory statements against Feldman and Matchroom.

18. On September 23, 2022, Matchroom filed a complaint against Defendant for defamation. *See Matchroom, et al v. Paul*, Civ. Action No. 22-cv-8178 (PGG) (S.D.N.Y. Sept. 23, 2022).

19. Feldman now brings this complaint against Defendant for defamation.

## JURISDICTION AND VENUE

20. This is an action for substantial damages in an amount in excess of the minimum jurisdictional limits of this Court.

21. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) in that it is a civil action between citizens of different States and involves an amount in controversy in excess of $75,000 (exclusive of interest and costs).

22. Defendant is subject to personal jurisdiction pursuant to New York's long-arm statute because Defendant transacted business in New York as the co-promoter of the Taylor-Serrano bout, which was held at Madison Square Garden in Manhattan and is one of the two bouts in which Defendant has baselessly accused Feldman of engaging in criminal behavior. N.Y.

C.P.L.R. § 302(a)(1) ("Section 302") confers personal jurisdiction for a court over a non-domiciliary defendant "[a]s to a cause arising from any of the acts enumerated in this section . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." N.Y. C.P.L.R. § 302(a)(1).

23. Venue is proper in this District pursuant 28 U.S.C. § 1391, as Defendant's defamatory statements reached this District, Defendant has minimum contacts with this District due to, for example, his co-promotion of the Taylor-Serrano fight, which was held at Madison Square Garden in Manhattan and is one of the two bouts in which Defendant has baselessly accused Feldman of engaging in criminal behavior. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985).

## THE PARTIES

24. Glenn Feldman is an individual who resides in Avon, Connecticut.

25. Defendant is an individual, and upon information and belief, resides in Dorado Beach, Puerto Rico.

26. Defendant is a social media influencer, boxer, and boxing promoter, and recently launched a sports-betting company called Betr.[5]

27. Defendant also co-founded the boxing promotional company, Most Valuable Promotions.

28. According to a news report, Defendant maintains over 70 million followers on social media and is one of the most searched public figures on Google.[6]

---

[5] *See* Jordan Kirkland, *Jake Paul Launches Miami-Based Sports Betting Company, Betr*, The Capitolist, Aug. 8, 2022, *available at* https://thecapitolist.com/jake-paul-launches-miami-based-sports-betting-company-betr/.
[6] *See supra* note 1.

## FACTUAL ALLEGATIONS

**A.      Feldman's Excellent Reputation as a Boxing Judge**

29.     For over three decades Feldman has worked tirelessly to establish his reputation as one of the most respected boxing judges in the world.

30.     Since beginning his career as a boxing judge in 1992, Feldman has been a judge for both the Nevada and New York Boxing Commissions, and has been invited to be a boxing judge in over 1,200 boxing matches in venues around the world, including some of the sports' most important bouts.

31.     For example, Feldman was chosen to judge: (i) the welterweight title fight between Floyd Mayweather and Manny Pacquaio in Las Vegas in 2015; (ii) the second middleweight title fight between Canelo Álvarez and Gennady Golovkin in Las Vegas in 2018; (iii) the second heavyweight title fight between Anthony Joshua and Andy Ruiz Jr. in Riyad, Saudi Arabia in 2019; and (iv) the second heavyweight title fight between Tyson Fury and Deontay Wilder in Las Vegas in 2020.

32.     Throughout his long career, Feldman has built an impeccable record as an objective judge.

33.     Feldman was inducted into the Connecticut Boxing Hall of Fame in 2011, and has been invited to present at boxing judge seminars for the Nevada and New York Athletic Commissions, as well as the World Boxing Organization, the World Boxing Association, and the International Boxing Federation—three of the four major sanctioning bodies in professional boxing.

34. To earn and maintain his fantastic reputation, Feldman unequivocally respects the rules and guidelines of the boxing profession, acts with transparency and integrity, and has long treated boxers fairly and with dignity.

35. Feldman also works as a financial advisor for Merrill Lynch.

**B.     Defendant's Defamatory Statements Against Feldman and Matchroom**

36. On or about September 20, 2022, Defendant made outrageously false and baseless accusations against Feldman and Matchroom.

37. Defendant claimed that Matchroom paid off scoring judge Feldman to score the bout between Usyk and Joshua (which was held in Saudi Arabia), as well as an earlier bout between Taylor and Serrano (which was held in Madison Square Garden in Manhattan), in favor of Joshua and Taylor respectively, due to those fighters' professional connections to Matchroom.

38. Defendant stated: "Glenn Feldman shows up in Saudi and scores Anthony Joshua to win the fight when everyone who watched the fight saw it's not a split decision, Usyk had a runaway victory, clearly won the fight, and this judge Glenn Feldman gives it to Anthony Joshua. It's like a repeated crime here. This type of shit, I'm going to call it out in boxing, because it's bullshit. Clearly this guy is getting paid money by Matchroom Boxing." *See supra* note 2.

39. At the time he made the statement, Defendant recognized the enormity of his proclamation against Feldman and Matchroom: "that's a bold statement and an accusation that I don't take lightly, but it's just so blatantly obvious and they're not even trying to hide it. You'd think they would try to get a different judge that fucked up the scoring from Taylor-Serrano." *Id*.

40. Defendant went even further in his false and baseless claims against Feldman and Matchroom, stating: "you'd think they would try to get a different judge to try and hide the corruption that they are bringing to this sport but it's just so blatantly obvious." *Id*.

41. Defendant likewise stated that Feldman and Matchroom have engaged in "a repeated crime." *Id*.

42. All of Defendant's foregoing statements regarding Feldman and Matchroom are false.

43. Neither Feldman nor Matchroom provided authorization to Defendant to make any of the aforementioned statements.

44. On information and belief, the foregoing statements of Defendant were made and published (i) with actual malice and knowledge of their falsity, and (ii) with the design and intent to harm Feldman in his profession.

**C.    Defendant's Defamatory Statements Reached a Broad Audience**

45. In less than twenty-four hours, Defendant's defamatory statements reached a very broad audience. In large part this is due to the fact that Defendant enjoys a substantial social media following—with over 70 million followers—and due to the fact that Defendant is one of the most searched public figures on Google. *See supra* note 1 and accompanying text.

46. For example, iFL TV, a well-known boxing media site, when publishing the interview, referred to Defendant's statements in a Twitter post as "EXTREMELY STRONG ACCUSATIONS" against Feldman and Matchroom.[6]

47. An article on *Boxing Social*, another well-known boxing media site, boasted in a headline that "Jake Paul Makes Extremely Serious 'Corruption' Allegation Against Matchroom," referring to the bribery allegations launched by Defendant against Feldman and Matchroom.[7]

---

[6] *See* https://twitter.com/ifltv/status/1572337128515993600?s=46&t=Iv4jr1LmoaHVwYJ4Ke6E8g (emphasis in the original).

[7] Kerr Ferguson, *Jake Paul Makes Extremely Serious "Corruption" Allegation Against Matchroom*, Boxing Social, Sept. 20, 2022, *available at* https://boxing-social.com/news/jake-paul-allegation-against-matchroom/.

9

48.     The *Boxing Social* article noted that Defendant, as a promoter, was on the losing end of the Taylor-Serrano fight. *See supra* note 9. The article further explained that although scoring disagreements are common in boxing, "rarely do they result in such a stark and targeted accusation." *Id*.

49.     A separate article, published on the respected website, *Boxing Scene*, was titled "Jake Paul Alleges Judge Glenn Feldman 'Clearly . . . Getting Paid Money by Matchroom Boxing.'"[8]

50.     The *Boxing Scene* article referred to Defendant's statements as "damning allegations." *See supra* note 10. The article further pondered why Defendant, rather than note his disagreement with the scoring, claimed "corruption between Feldman and Matchroom." *Id*.

51.     An article published in *Fight Sports* was titled "Jake Paul Accuses Boxing Judge of Being Paid by Matchroom Boxing."[9]

52.     The *Fight Sports* article wrote that Paul "claimed that boxing judge Glenn Feldman is not doing his scorecards fairly." *See supra* note 11.

53.     The aforementioned articles represent just a small subset of publications that highlighted Defendant's outlandishly false and defamatory statements regarding Feldman and Matchroom.[10]

---

[8] Jake Donovan, *Jake Paul Alleges Judge Glenn Feldman "Clearly . . . Getting Paid Money by Matchroom Boxing,"* Boxing Scene, Sept. 21, 2022, *available at* https://www.boxingscene.com/jake-paul-alleges-judge-glenn-feldman-clearly-getting-paid-money-by-matchroom-boxing--169206.

[9] *Jake Paul Accuses Boxing Judge of Being Paid by Matchroom Boxing*, Fight Sports, Sept. 21, 2022, *available at* https://www.fightsports.tv/jake-paul-accuses-boxing-judge-of-being-paid-by-matchroom-boxing/.

[10] Some additional news reports include: Joshua Ben Joseph, *"It's Like a Repeated Crime Here": Jake Paul Makes Serious Accusations Against Anthony Joshua's Promoter Eddie Hearn*, Essentially Sports, Sept. 21, 2022, *available at* https://www.essentiallysports.com/boxing-news-its-like-a-repeated-crime-here-jake-paul-makes-serious-accusation-against-anthony-joshuas-promoter-eddie-hearn/; and *Jake Paul Acusa al Juez Feldman de Recibir Dinero de Matchroom Boxing*, Not Fight, Sept. 21, 2022, *available at* https://notifight.com/jake-paul-acusa-al-juez-feldman-de-recibir-dinero-de-matchroom-boxing/.

**D.     Defendant Knew, or Should Have Known, That His Statements Were False**

54.     Defendant knew, or should have known, that his accusations were false at the time that he made them.

55.     Not only is Defendant a boxer, he is also a boxing promoter and a co-founder of a boxing promotional company. As such, Defendant is—or at the very least should be—intimately familiar with how judges are selected for fights.

56.     As Defendant should be aware—the applicable boxing commission, i.e., the Middle Eastern Professional Boxing Commission for the bout between Usyk and Joshua, and the New York State Athletic Commission for the bout between Taylor and Serrano—not the promoter of the bouts—is responsible for choosing the judges.

57.     Thus, it is factually impossible for Feldman and Matchroom to have engaged in what Defendant called "corruption" by Matchroom bringing Feldman in as a judge. It simply was not Matchroom's decision to do so, and Defendant knew, or should have known, that.

58.     Furthermore, there is absolutely no evidence that Feldman or Matchoom has engaged in any wrongful conduct, let alone bribery in both of the aforementioned bouts.

59.     Defendant's motivations for his false, baseless, and accusatory statements are not difficult to discern. Defendant was the promoter for Serrano in the Taylor-Serrano fight, and Matchroom was the promoter for Taylor. Taylor won the fight in what *Sports Illustrated* later called "the fight of the year—full stop."[11] *Sports Illustrated*, a preeminent sports media publication, detailed how the fight between the women was "a classic," and further wrote that Taylor's win "cemented her place" as one of the most accomplished fighters in women's boxing,

---

[11] Chris Mannix, *Katie Taylor vs. Amanda Serrano Was the Fight of the Year—Full Stop*, Sports Illustrated, May 2, 2022, *available at* https://www.si.com/boxing/2022/05/02/katie-taylor-amanda-serrano-madison-square-garden-fight.

and arguably "enhanced her case to be called the greatest women's boxer of all time." *See supra* note 13. Nothing in the article even remotely called into question the scoring of the fight, let alone mentioned any potential wrongful conduct on the part of Feldman and Matchroom. *Id*.

### E.     **Feldman Has Suffered Damages Due to Defendant's Defamatory Statements**

60.     Feldman has suffered, and will continue to suffer, significant financial and reputational damages due to Defendant's defamatory statements.

61.     The world of professional boxing is closely knit, with only a handful of individuals vying for the opportunity to serve as boxing judges. This is particularly true for high-profile boxing matches, where boxing judges often receive substantial compensation for their work.

62.      Feldman's strengths as trusted and objective judge have been core components of his undisputed integrity in the business. Defendant's defamatory statements are therefore particularly damaging to Feldman and go to the very core of his business and earning potential.

63.     The negative impact of Defendant's defamatory statements about Feldman have been magnified because once Defendant initiated his false and scandalous allegations, they have been repeated and paraphrased by reporters and news media throughout the United States and internationally.

64.     These additional publications and paraphrasing of Defendant's defamatory and libelous statements were foreseeable, and, on information and belief, Defendant anticipated and desired such additional publications in order to cause even more injury to Feldman's business and reputation.

65.     Indeed, since the date of Defendant's defamatory statements and up to the filing of this complaint, Feldman has not been invited to judge a single boxing match.

## COUNT ONE

### (Defamation)

66. Feldman repeats and realleges each and every allegation in paragraphs 1 through 65 as if fully and completely set forth herein.

67. Defendant made his false and defamatory statements deliberately and maliciously with the intent to intimidate, discredit, and defame Feldman.

68. Defendant has made statements of fact against Feldman that are false.

69. At the time Defendant made his statements, Defendant knew, or should have known, that the statements were false.

70. Defendant's statements were made to reporters, newspapers, and other public outlets, among other places and persons. The statements were not privileged.

71. Defendant's statements were published to a broad audience.

72. Defendant deliberately made the statements knowing they would be disseminated to a broad audience and would harm Feldman's reputation and good standing. Defendant acted with spite and malice when making the defamatory statements. As intended by Defendant, Defendant's defamatory statements were, in fact, widely published and disseminated around the world, including in the Southern District of New York.

73. Given the absence of any evidence to substantiate Defendant's statements, Defendant issued his statements with actual knowledge that such statements were false and in reckless disregard for their falsity. In either case, Defendant issued these statements intending to harm Feldman.

74. Defendant's statements have harmed Feldman's reputation in the public, impute the commission of a crime, and/or call into question Feldman's fitness to perform his work in his trade and profession.

75. Defendant's false statements constitute slander, as he spoke false statements about Feldman in a video that was, upon information and belief, recorded by a third party, and knew that the statements were going to be transmitted in writing, and widely disseminated on the Internet in video and/or in print. Defendant intended his false statements to be published by newspaper and other media outlets internationally, and they were, in fact, published globally, including within the Southern District of New York.

76. Defendant's false statements constitute slander *per se*, including that they accused Feldman of a crime of significant proportion in the sport of professional boxing, and including that they exposed Feldman to public contempt, ridicule, aversion, and disgrace, and induced an evil opinion of Feldman in the minds of right-thinking persons.

77. Defendant's false statements constitute libel, as he knew that they were going to be transmitted in writing, and widely disseminated on the Internet and in print. Defendant intended his false statements to be published by newspaper and other media outlets internationally, and they were, in fact, published globally, including within the Southern District of New York.

78. Defendant's false statements constitute libel *per se*, including that they accused Feldman of a crime of significant proportion in the sport of professional boxing, and have thus, exposed Feldman to public contempt, ridicule, aversion, and disgrace, and induced an evil opinion of Feldman in the minds of right-thinking persons.

79. Defendant's false statements also constitute libel *per se*, inasmuch, among other reasons, as they tended to injure Feldman in his professional capacity as a premier and objective

boxing judge, and inasmuch as they intended to destroy Feldman's credibility and reputation among members of the boxing community and profession.

80. Because Defendant's conduct was undertaken in bad faith and with fraud, malice, and oppression, Feldman is entitled to punitive damages.

81. Defendant knowingly made false statements to third parties with actual malice and knowledge of their falsity, and which tended to injure Feldman in his profession constituting defamation *per se*.

82. As a consequence of Defendant's defamatory statements, Feldman is entitled to substantial and significant damages in an amount to be determined at trial.

83. Defendant's false statements have caused, and continue to cause, Feldman economic damage and reputational harm, and other direct and consequential damages and losses.

84. Feldman is also entitled to recover punitive damages from Defendant in that Defendant made his defamatory statements: (i) with knowledge of its falsity and/or with wanton and reckless disregard for its truth; and (ii) Defendant's decision to defame was motivated by hatred, ill will, spite, and/or a criminal mental state as directed at Feldman.

85. Punitive and exemplary damages are necessary in this case to deter Defendant and others from wantonly and maliciously using a campaign of lies to discredit Feldman and other boxing judges.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Feldman respectfully requests judgment against Defendant awarding compensatory, consequential, special, exemplary, and punitive damages in an amount to be determined at trial, but in excess of the $75,000 jurisdictional requirement; costs of suit; attorneys' fees; and such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Feldman hereby demands a trial by jury on all causes of action asserted within this pleading.

Dated: New York, New York
October 24, 2022

SALZANO, LAMPERT & WILSON, LLP

By: */s/ Frank Salzano*

Frank Salzano, Esq.
Jason Lampert, Esq.
275 Madison Ave., Floor 35
New York, New York 10016
Tel: (646) 863-1883
Fax: (646) 365-3119
fsalzano@slwlawoffices.com

John L. Laudati, Esq.
(*pro hac vice forthcoming*)
MURPHY, LAUDATI, KIEL, & RATTIGAN, LLC
4 E. Granby Rd., P.O. Box 93
Granby, Connecticut 06035
Tel: (860) 674-8269, ext. 102
Fax: (860) 413-9504
JLaudati@mlkrlaw.com

*Attorneys for Glenn Feldman*