**SALZANO ETTINGER LAMPERT & WILSON LLP**

275 Madison Ave., 35th FL
New York, NY 10016
selwlaw.com
646.863.1883 P
646.365.3119 F

December 1, 2022

**VIA ELECTRONIC FILING**
Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, NY 10007

**Re: Matchroom Boxing Limited, et al v. Jake Paul; Case No. 1:22-cv-08178-PGG**

Your Honor:

As you are aware, our office is counsel for Plaintiffs Matchroom Boxing Limited ("Matchroom") and Eddie Hearn ("Hearn"), as well as co-counsel with Murphy, Laudati, Kiel & Rattigan, LLC for Plaintiff-Intervenor Glenn Feldman ("Feldman") (referred to herein collectively as "Plaintiffs"). Please allow this letter to serve as Plaintiffs' response to the contentions set forth in Defendant Jake Paul's ("Defendant" or "Paul") request for a pre-motion conference under Rule IV(A) of Your Honor's Individual Rules of Practice, in which Defendant ultimately seeks (i) dismissal of Plaintiffs' claims for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(2), and/or (ii) dismissal of Plaintiffs' claims for improper venue, pursuant to FRCP 12(b)(3). [Doc. 16] (the "Motion").

Simply put, Defendant glaringly ignores crucial aspects of the circumstances surrounding Defendant's defamatory statements, as well as Defendant's numerous and continuous connections with the State of New York and this Judicial District, in an attempt to remove this matter from this jurisdiction.

**Nature of the Action**

On September 20, 2022, Defendant made false, offensive, and damaging accusations regarding Matchroom and Hearn, stating that they bribed longtime boxing judge Feldman to score two boxing matches in favor of the fighters whom Matchroom promotes. [*See* Doc. 6, at ¶¶ 6, 19-20, 32]. The fights in question were (1) Katie Taylor ("Taylor") vs. Amanda Serrano ("Serrano"), which occurred at Madison Square Garden—which sits in this Judicial District—in April of 2022, and (2) Oleksandr Usyk ("Usyk") vs. Anthony Joshua ("Joshua"), which occurred in Saudi Arabia on August 20, 2022. *Id.* For purposes of clarity, Matchroom and Hearn were the promoters for Taylor, who came out victorious, as well as for Joshua, who suffered defeat. Feldman was one of three judges for each of those boxing matches. Defendant, on the other hand, and his boxing promotional company, Most Valuable Promotions, LLC ("MVP"),[1] promote Serrano and, along with Matchroom, were the co-promoters of Taylor-Serrano.

---

[1] Defendant is not only listed as a director/officer and "authorized person" of MVP, *see* Exhibit A attached hereto, but MVP has repeatedly been referred to as Defendant's company in numerous articles written since the company's creation, including by Serrano herself, who told TMZ Sports that signing with "Jake Paul's boxing promotion … was 'literally the best professional move [she's] ever made.'" *See Boxing Star Amanda Serrano Signing W/Jake Paul …*



Importantly, in connection with Taylor-Serrano, Defendant and MVP entered into a Co-Promotion agreement with Matchroom Boxing USA LLC—a subsidiary of Matchroom with its principal place of business in New York, New York, [*See* Doc. 6, at ¶ 20]—on or about January 14, 2022 (the "Co-Promotion Agreement"). *See* Exhibit B attached hereto. Pursuant to the Co-Promotion Agreement, the governing law is the substantiative laws of New York and the Co-Promotion Agreement's dispute resolution provision requires binding arbitration in New York, New York, with the parties consenting to the "personal jurisdiction of the state and federal courts located in New York County" for confirming or enforcing the award. *Id.* The Co-Promotion Agreement—through which Defendant and MVP ultimately earned a profit share from the Taylor-Serrano event—specifically refers to Defendant by name at least ten (10) separate times. *Id.*

While Plaintiffs' Complaint and Proposed Complaint primarily focus on the actual defamatory statements made by Defendant—*e.g.,* "clearly this guy is getting paid money by Matchroom Boxing"––a full transcript of Defendant's statements explicitly provides the clear impetus for Defendant's defamatory statements—"I still think Amanda Serrano won the fight … And then you see how this Glenn Feldman … gave rounds that Amanda [Serrano] clearly won, to Taylor." [*See* Doc. 6, at ¶¶ 7, 33, and note 11; *see also* Doc. 14-1, at ¶¶ 8, 38]. This crucial aspect of his statements cannot be ignored, as it makes clear that Defendant's defamatory statements were borne specifically out of the Taylor-Serrano bout, and his refusal to accept the final result thereof.

**This Court Clearly Has Personal Jurisdiction Over Defendant**

New York courts have personal jurisdiction over a non-domiciliary, such as Defendant (who purports to reside in Puerto Rico) under CPLR § 302(a)(1) when the "non-domiciliary 'transacts business'" or "'purposefully avails' himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (internal citations omitted). The key inquiry in this first prong is whether the defendant has engaged in sufficient acts within the state such that he "should reasonably anticipate being haled into court there." *Id.* at 243 (quoting *Hanson v. Denckla*, 357 U.S. 235, 243 (1958)). In assessing this prong, "[c]ourts look to "the totality of the defendant's actions within the forum." *Id.* at 246 (quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d. Cir. 1975)).

Here, despite Defendant attempting to paint his contact with New York as being merely "brief visits," this is simply not supported by the facts. There is little question that Defendant has routinely transacted business within the State of New York, and availed himself of the benefits of this State, not only through entering into the Co-Promotion Agreement, and co-promoting Taylor-Serrano, but through numerous other acts dating back to 2017. In fact, in February of 2022, Defendant engaged in a multi-day promotional tour through New York City to announce the Taylor-Serrano event, which included attending a full week of promotional events, and Defendant personally attended the entirety of the Taylor-Serrano event on April 30, 2022. Furthermore, aside from his personal boxing endeavors—which includes two scheduled, yet cancelled, bouts at Madison Square Garden[2]—Defendant has

---

*Best Decision I've Made!!,* https://www.tmz.com/2021/11/26/amanda-serrano-boxing-champion-jake-paul-mvp-promotions, TMZ Sports (November 26, 2021, 12:05 AM PT).

[2] *See* Damia Freehill, *Jake Paul's MVP Promotions gives an update on the Tommy Fury Fight*, https://www.sportskeeda.com/pro-boxing/news-boxing-news-jake-paul-s-mvp-promotions-gives-update-fury-v-paul-press-conference (last visited November 30, 2022); *see also Jake Paul Hasim Rahman Jr. Fight Cancelled … Over Weight Issue*, https://www.tmz.com/2022/07/30/jake-paul-august-6-boxing-fight-vs-hasim-rahman-jr-canceled,



engaged in numerous other business endeavors in the State of New York, including setting up a pop-up shop in New York, New York in December of 2017, and participating in a number of press conferences at Madison Square Garden, including one on July 12, 2022.³

And, while Defendant argues that his co-promotion of Taylor-Serrano was only "undertaken in his corporate capacity," *see* Motion, Defendant was personally invested, and was personally involved, in each and every aspect of the event, as outlined herein. Furthermore, New York courts have wholly "abandoned the fiduciary shield doctrine, under which a corporate representative will not be subject to the state's jurisdiction where his only contacts with the state arise of his work for his employer," instead regularly finding that personal jurisdiction can be found "over a corporate officer," as Defendant is for MVP, *see* note 1, *supra*, "or employee based upon his contacts in New York, even if his activities were performed solely in a corporate capacity." *Giannetta v. Johnson*, No. 20 CIV. 9016 (PAE), 2021 WL 2593305, at *10 (S.D.N.Y. June 24, 2021) (internal citations omitted).

The existing circumstances, which include, *inter alia*, Defendant having purposely availed himself to the State of New York solely through entering into the Co-Promotion Agreement, and agreeing to litigate claims in New York and under New York law, are clearly distinguishable from the facts in *Best Van Lines, Inc. v. Walker*, where the plaintiff alleged that "the defamatory publication itself constitute[d] the 'transaction of business' for purposes of section 302(a)(1)." *Best Van Lines, Inc.*, at 248. Considering Defendant's frequent contacts with the State of New York, this case is more closely related to the defendant's activities in *Keeton v. Hustler Magazine Inc.*, in which the court stated that the defendant "continuously and deliberately exploited the New Hampshire market … thereby creating in defendant a reasonable expectation that it might be haled into court there." *Keeton*, 465 U.S. 770 (1984).

The second prong of the inquiry requires the plaintiff to show that there is "an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State." *Giannetta*, No. 20 CIV. 9016 (PAE), 2021 WL 2593305, at *5 (citing, among other cases, *Walden v. Fiore*, 571 U.S. 277, 285 (2014). In short, there must be a "substantial relationship," or articulable nexus, "between the activities and the cause of action." *Talbot v. Johnson Newspaper Corp.*, 522 N.E.2d 1027, 1028 (N.Y. 1988). Here, this Court need not look any further than Defendant's own statements to find that his defamatory remarks, as it relates to both Taylor-Serrano and Usyk-Joshua, were a direct result and "conceived" at the time of Defendant's disagreement with and inability to accept that his company's most-notable fighter, Serrano, had been beaten by Taylor in Madison Square Garden in April of 2022. *See Kingstown Cap. Mgmt. L.P. v. CPI Prop. Grp., S.A.*, 167 N.Y.S.3d 92, 94 (N.Y. App. Div. 1st Dept. 2022) (citing *Copp v. Ramirez*, 874 N.Y.S.2d 52 (N.Y. App. Div. 1st Dept. 2002)). In addition to the above, the second prong of CPLR § 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent … contracts anywhere to supply goods or services in the state." *See Bank Brussels Lambert v. Fiddler*

---

TMZ Sports (July 30, 2022, 5:40 PM PT).

³ *See Jake Paul: 'New York Pop-Up Shop Will Be An Instagramable Experience*, https://www.cbsnews.com/newyork/news/jake-paul-interview/, CBS News New York (December 7, 2017, 5:02 PM); *see also* Ritvic Pratap Singh, *"It Just Seems Like…": Jake Paul Makes an Honest Confession About WWE and Roman Reigns After Crown Jewel 2022*, https://www.essentiallysports.com/wwe-boxing-news-it-just-seems-like-jake-paul-makes-an-honest-confession-about-wwe-and-roman-reigns-after-crown-jewel-2022 (November 7, 2022, 5:30 AM CST).

3



*Gonzalez & Rodriguez*, 171 F.3d 779, 786 (2d Cir. 1999)(quoting CPLR § 302(a)(1)). In this case, it is undeniable that Defendant, through MVP and his manager/advisor Nakisha Bidarian, contracted with Matchroom's New York-based subsidiary "[f]or the professional boxing services of Amanda Serrano" to be rendered in the State of New York and in this Judicial District. *See* Exhibit B.

Defendant additionally cites to cases such as *Talbot* and *Copp*, *supra*, for the proposition that Defendant's false accusations were too "attenuated" from, or merely coincidental to, Taylor-Serrano, such that his statements could not be substantially related thereto. *See* Motion. Among other distinguishing aspects of those cases, the activities the plaintiffs in those cases contended constituted "transacting business" occurred two years and three years, respectively, prior to the defendant's statements. *See Talbot* and *Copp*, *supra*. As Defendant explains in the Motion, Defendant's statements were made only "weeks" after his "co-promotion of the Taylor-Serrano fight," and, as outlined herein, such statements are not merely coincidental to Taylor-Serrano, but were made as a direct result, and in contemplation, thereof. *See* Motion.

### **This Court Is the Proper Venue for This Action**

When a court analyzes a claim for improper venue, it is required to "view all facts in the light most favorable to the plaintiff," and "must accept the facts alleged in the complaint and construe all reasonable inferences in the plaintiff's favor." *Ne. Landscape & Masonry Assocs., Inc. v. State of Connecticut Dep't of Lab*., No. 14-CV-9104 (KMK), 2015 WL 8492755, at *2 (S.D.N.Y. Dec. 10, 2015) (citing *Phillips v. Audio Active Ltd*., 494 F.3d 378, 384 (2d Cir. 2007); quoting *Matera v. Native Eyewear, Inc*., 355 F. Supp. 2d 680, 681 (E.D.N.Y. 2005)). Ultimately, venue is proper under 28 U.S.C. § 1391(b)(2-3) in a Judicial District in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought ..., any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b)(2-3).

When the plaintiff asserts venue is proper under § 1391(b)(2), as the Plaintiffs' do here, "a district court must engage in a two-step inquiry: first, 'identify[ing] the nature of the claims and the alleged acts or omissions giving rise to the claim,' and second, 'determin[ing] whether a substantial part of the acts or omissions occurred in the district where the suit was filed.'" *Ne. Landscape*, No. 14-CV-9104 (KMK), 2015 WL 8492755, at *2 (internal citations omitted). For venue to be proper, "*significant* events or omissions *material* to the plaintiff's claims must have occurred in the district in question, even if other material events occurred elsewhere." *Id.* (citing *Gulf Ins. Co. v. Galsbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)) (emphasis in the original). Indeed, it is not necessary for Plaintiffs to establish that this Judicial District has "the most substantial contacts to the dispute; rather it is sufficient that a substantial part of the events occurred" in the Judicial District, "even if a greater part of the events occurred elsewhere." *Id.* Defendant, however, clearly ignores this component, harping repeatedly on the fact that the statements were made during a video interview while he was in Puerto Rico.

Further, while Defendant correctly contends that courts look at the relevant activities of the defendant, not of the plaintiff, he erroneously argues to this Court that the place where the Plaintiffs' harm was felt, *i.e*., in this Judicial District, is irrelevant to the venue assessment. *See* Motion. To the contrary, New York courts have remained consistent in finding that the "economic-effects inquiry," *i.e*., where plaintiff's harm occurred, cannot, standing alone, support a venue argument, however, "the locus of the harm suffered is a factor to consider." *Id.* at *3 (citing *Astor Holdings, Inc. v. Roski*, No. 01-CV-



1905, 2002 WL 72936, at *9 (S.D.N.Y. Jan. 17, 2002)). There can be no question here that Matchroom, whose subsidiary Matchroom Boxing USA, LLC's headquarters is situated, and who frequently promotes boxing events, in this Judicial District, has been significantly economically harmed by Defendant's defamatory accusations within this Judicial District. The same goes for Feldman, who throughout his thirty-plus year career as a professional boxing judge, has scored numerous bouts at Madison Square Garden.

This case is not one where "the case's operative facts have little or no connection with the … forum"; where the "defamatory statements made outside New York [only] peripherally involve plaintiff's New York business"; or one where Defendant needs to be protected from "an unfair or inconvenient place of trial." *See Totonelly v. Cardiology Assocs. of Corpus Christi*, 932 F.Supp. 621, 623 (S.D.N.Y.1996); *see also Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 349–50 (S.D.N.Y. 2003); *see also Ne. Landscape*, *supra* (citing *Prospect Capital Corp. v. Bender*, No. 09-CV-826, 2009 WL 4907121, at *3 (S.D.N.Y. Dec. 21, 2009)). Instead, this a case where Defendant became frustrated over arguably his most-acclaimed fighter receiving a result he could not accept, in a boxing match co-promoted by his own promotion company within this Judicial District, and thus set out on a defamatory campaign against the Plaintiffs, which culminated in the defamatory statements that are the subject of the instant action. Based solely on such, it is illogical for Defendant to argue that this Judicial District is not the proper venue.

Furthermore, this Court must also consider how a potential transfer of this case to another Judicial District, such as the District of Puerto Rico, which Defendant contends is the "proper[]" Judicial District for this case to be heard, *see* Motion, or a dismissal, which will inevitably result in Plaintiffs refiling this action in another Judicial District, would affect "the availability of witnesses and the accessibility of other relevant evidence." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 185 (1979). Notably, if Defendant has any chance whatsoever to defend Plaintiffs' claims by proving that his statements were true, which he cannot, then without question his defense will require the testimony of numerous witnesses, including executives and employees of Matchroom Boxing USA, LLC, as well as the accumulation of significant evidence; most of which would exist, if it does exist, in this Judicial District. In short, in attempting to prove the veracity of his defamatory statements, which Plaintiffs contend he cannot, Defendant will presumably have to allege, albeit falsely, that Plaintiffs' corruption occurred either in New York, or at least as it relates to Taylor-Serrano, in connection with a major sporting event that took place in New York, and within this Judicial District.

In sum, Defendant routinely transacts substantial business in the State of New York; this action directly arises from that business, *i.e.*, Taylor-Serrano; and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this Judicial District. Thus, this Court has personal jurisdiction over Defendant, and venue is proper in this Judicial District.

Respectfully submitted,

/s/Frank Salzano

Frank Salzano, Esq.

cc: All Counsel of Record (via ECF)

5

