UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATCHROOM BOXING LIMITED and
EDWARD JOHN HEARN,

      Plaintiffs, and

GLENN FELDMAN,

      Plaintiff-Intervenor,
   -against-

JAKE PAUL,

      Defendant.

**ORDER**

22 Civ. 8178 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

   Plaintiffs Matchroom Boxing Limited and Edward John Hearn – as well as Plaintiff-Intervenor Glenn Feldman – allege that Defendant Jake Paul, "a social media influencer, boxer, and boxing promoter," defamed them by claiming that Matchroom Boxing – a boxing promoter – bribed Feldman, a boxing judge, to influence the outcome of two boxing matches that Feldman refereed.  (Cmplt. (Dkt. No. 6) ¶¶ 3, 6-7, 57; Intervenor Cmplt. (Dkt. No. 23) ¶ 66)

   Defendant Paul – a resident of Puerto Rico – has moved to dismiss under Rule 12(b)(3) of the Federal Rules of Civil Procedure for improper venue, under Rule 12(b)(2) for lack of personal jurisdiction, and under Rule 12(b)(6) for failure to state a claim.  (Dkt. No. 51)

   For the reasons stated below, Defendant's motion to dismiss will be denied.

## BACKGROUND

I. **FACTS**

   A. **The Parties**

Plaintiff Matchroom Boxing is a boxing promotion company "organized and existing under the laws of the United Kingdom, with its principal place of business in the United Kingdom." (Cmplt. (Dkt. No. 6) ¶ 21) Plaintiff Edward John Hearn "is an individual, who resides in Essex, England, and is the chairman of the Matchroom group of companies, a boxing promoter, sports executive, media personality, and award-winning author." (Id. ¶¶ 22).

Plaintiff-Intervenor Glenn Feldman is a boxing judge who resides in Connecticut. (Intervenor Cmplt. (Dkt. No. 23) ¶¶ 24, 29).

Defendant Jake Paul is a "a social media influencer, boxer, and boxing promoter" who "maintains a substantial following on social media, with approximately 20.7 million followers on Instagram, 20.4 million subscribers on YouTube, 16.6 million followers on TikTok, 5.7 million followers on Facebook, and 4.4 million followers on Twitter." (Cmplt. (Dkt. No. 6) ¶ 3) Paul resides in Puerto Rico. (Id. ¶ 23)

Paul "co-founded the boxing promotional company, Most Valuable Promotions" ("MVP"), and is a "50 percent" owner. (Id. ¶ 25; Fritz Decl., Ex. C (Paul Dep.) (Dkt. No. 52-3) at 31-32)

   B. **The Boxing Matches**

The alleged defamatory statements relate to an April 30, 2022 boxing match held at Madison Square Garden, and an August 2022 boxing match held in Saudi Arabia. (Id. ¶ 6; Intervenor Cmplt. (Dkt. No. 23) ¶ 7)

   1.  **<u>The April 30, 2022 Taylor-Serrano Fight</u>**

  The New York City boxing match – billed as the "biggest fight ever in women's boxing history" – featured Katie Taylor and Amanda Serrano and was held on April 30, 2022, at Madison Square Garden. (Paul Decl., Ex. B (Taylor-Serrano Promotional Flyer) ((Dkt. No. 53-2) at 1) Matchroom Boxing was the promoter for Taylor. (Cmplt. (Dkt. No. 6) ¶ 6) Paul, through MVP Management LLC, was the promoter for Serrano. (Id.; Fritz Decl., Ex. C (Paul Dep.) (Dkt. No. 52-3) at 43, 51)

  On January 14, 2022, MVP Management LLC entered into a Co-Promotion Agreement with Matchroom Boxing USA LLC pursuant to which "[Amanda Serrano] will engage in a 10 round lightweight contest against Katie Taylor . . . on April 30, 2022 . . . at Madison Square Garden, New York, New York." (Dec. 1, 2022 Pltf. Ltr., Ex. B (Jan. 14, 2022 Co-Promotion Agmt.) (Dkt. No. 17-2) § 1.1) The Co-Promotion Agreement obligates MVP Management to "provid[e] Matchroom . . . with reasonable access to Jake Paul during the buildup to the Bout to conduct TV and other media interviews"; directs that "Jake Paul shall use commercially reasonable efforts to attend all fight week promotional events and the Event"; and directs that "Jake Paul shall use commercially reasonable efforts to participate in such other live social media activities relating to the publicity and promotion of the Bout (which may include but shall not be limited to, appearing at a reasonable number of telephone or zoom press conferences, interviews and other promotional activities) as Matchroom may reasonably request." (Id. §§ 4.1, 4.2)

  Prior to the fight, Paul "attend[ed] various press conferences" in New York City and "d[id] some social media posts" about the fight. (Fritz Decl., Ex. C (Paul Dep.) (Dkt. No. 52-3) at 59-60) On February 2, 2022, Paul "participated in a press conference in New York for the Taylor-Serrano fight" as "a representative of . . . MVP Management LLC." (Paul Decl. (Dkt.

3

No. 53) ¶¶ 6-7) The February 2, 2022 press conference took place "at Madison Square Garden," and Paul later did "a full tour of all New York media that morning" and "[rang] the New York Stock Exchange bell." (Fritz Decl., Ex. D (Palmer Dep.) (Dkt. No. 52-4) at 26, 30-31)

Paul arrived in New York City on April 26, 2022; attended an April 28, 2022 press conference for the fight; attended the boxers' April 29, 2022 "weigh in"; and attended the fight itself on April 30, 2022. (Fritz Decl., Ex. E (Hearn Dep.) (Dkt. No. 52-5) at 11-12; see Fritz Decl., Ex. D (Palmer Dep.) (Dkt. No. 52-4) at 26 ("[F]or the actual fight week itself, [Paul] was a full co-promotor, so [Paul] would appear at all press conferences, did lots of media, [and] supported his fighter, Amanda Serrano, in her press engagements . . . .")) Paul "sat next to [Hearn]" at Madison Square Garden during the fight. (Fritz Decl., Ex. E (Hearn Dep.) (Dkt. No. 52-5) at 12) MVP Management also "receive[d] income" as a result of the fight, although Paul does not know how much the company received. (Fritz Decl., Ex. C (Paul Dep.) (Dkt. No. 52-3) at 56)

Taylor won the Taylor-Serrano bout in a split decision, with two judges scoring a win for Taylor and one judge scoring a win for Serrano. (Cmplt. (Dkt. No. 6) ¶ 6) Boxing judge and Plaintiff-Intervenor Feldman scored the match 97-93 for Taylor. A second judge, Guido Cavalleri, scored the match 96-93 for Taylor. The third judge, Benoit Roussel, scored the match 96-94 in favor of Serrano. (Salzano Decl., Ex. C (Serrano BoxRec Page) (Dkt. No. 57-3) at 3)

2. **The August 2022 Usyk-Joshua Fight**

The second boxing match at issue took place in August 2022 in Saudi Arabia, and was between boxers Oleksandr Usyk and Anthony Joshua. (Cmplt. (Dkt. No. 6) ¶ 6) Matchroom Boxing was the promoter for Joshua (Id.) Feldman served as one of the three judges. (Id.) Neither Paul nor MVP Management is alleged to have had any involvement in the Usyk-Joshua fight.

4

The match resulted in a win for Usyk by split decision. Feldman scored the fight in favor of Joshua, 115-113. The other two judges scored the fight in favor of Usyk, with scores of 116-112 and 115-113. (Id. ¶¶ 6, 9 & n.4 (citing "Hearn: I Had Usyk Winning 115-113, What He Did in Tenth Round Was Unbelievable," BoxingScene (Aug. 21, 2022), available at https://www.boxingscene.com/hearn-i-usyk-winning-115-113-what-he-tenth-round-unbelievable--168514))

    C.    **The Alleged Defamatory Statements**

On September 20, 2022, Paul participated in an online interview with iFL TV, "a well-known boxing media site," in which Paul discussed, inter alia, the results of the Taylor-Serrano fight and the Usyk-Joshua fight. (Id. ¶¶ 6, 41) Paul was in Puerto Rico at the time of the interview. (Fritz Decl., Ex. C (Paul Dep.) (Dkt. No. 52-3) at 68)

During the interview, Paul stated that "clearly [Feldman] is getting paid money by Matchroom Boxing" to score boxing matches in favor of Matchroom Boxing's fighters, Katie Taylor and Anthony Joshua. (Cmplt. (Dkt. No. 6) ¶ 7) Paul acknowledged that "that's a bold statement" and "an accusation that [he doesn't] take lightly," but said that "it's just so blatantly obvious and they're not even trying to hide it." (Id.). Paul also said that "you'd think they would try to get a different judge to try and hide the corruption they are bringing to this sport but it's just so blatantly obvious." (Id.) According to Paul, Matchroom Boxing's conduct is "a repeated crime." (Id.)

Matchroom Boxing and Hearn deny paying bribes to Feldman, and contend that Paul's claims are "patently false." (Id. ¶ 8) Feldman likewise denies taking bribes from Matchroom Boxing and describes Paul's claims as "outlandishly false and baseless." (Intervenor Cmplt. (Dkt. No. 23) ¶ 6)

5

The Complaint alleges that, "[w]ithin 24 hours of Defendant's false statements, several news and social media sites replayed Defendant's false and accusatory statements, while others wrote about Defendant's claims regarding Matchroom." (Cmplt. (Dkt. No. 6) ¶ 11) "Media characterized Defendant's statements as 'damning accusations' against Matchroom and 'EXTREMELY STRONG ACCUSATIONS' against Matchroom." (Id. ¶ 12) (emphasis in original)  Plaintiffs contend that the "[t]he media blitz has continued up to the filing of this complaint." (Id. ¶ 13)

Plaintiffs also state that "Matchroom representatives contacted Defendant through his agent, and urged Defendant to retract the false accusations." (Id. ¶ 15)  Paul "refused to comply with Matchroom's request." (Id.)

## II.   PROCEDURAL HISTORY

The Complaint was filed on September 26, 2022. (Dkt. No. 6)  Plaintiffs Matchroom Boxing and Hearn assert a defamation claim against Paul in connection with his statements during the September 20, 2022 iFL TV interview. (Id. ¶ 57)

Plaintiff-Intervenor Feldman filed a motion to intervene on October 14, 2022 (Dkt. No. 14), which this Court granted on December 13, 2022. (Dkt. No. 21)  Feldman filed the Intervenor Complaint on December 21, 2022.  The Intervenor Complaint likewise asserts a defamation claim against Paul in connection with the September 20, 2022 iFL TV interview. (Intervenor Cmplt. (Dkt. No. 23) ¶ 66)

In a November 28, 2022 letter, Paul requested permission to file a motion to dismiss the Complaint based on improper venue and lack of personal jurisdiction. (Nov. 28, 2022 Paul Ltr. (Dkt. No. 16) at 1)  In a December 13, 2022 order, this Court directed the parties to conduct jurisdictional discovery for thirty days. (Dkt. No. 20)  This Court later extended the deadline to complete jurisdictional discovery to April 14, 2023. (Dkt. No. 40)

6

Paul filed the instant motion to dismiss on August 16, 2023. (Dkt. No. 51) Plaintiffs and Intervenor-Plaintiff filed their opposition on September 6, 2023 (Dkt. No. 56), and Paul filed a reply on September 13, 2023. (Dkt. No. 55)

## DISCUSSION

In moving to dismiss the Complaint and Intervenor Complaint, Defendant Paul contends that (1) venue is improper in the Southern District of New York under Rule 12(b)(3); (2) this Court lacks personal jurisdiction over him under Rule 12(b)(2); and (3) the Complaint and Intervenor Complaint fail to state a claim under Rule 12(b)(6). (Def. Br. (Dkt. No. 54) at 6)

### I.   VENUE

Paul contends that venue in this District is improper because, inter alia, he resides in Puerto Rico; he made the alleged defamatory statements while in Puerto Rico; and he lacks contacts with the Southern District of New York. (Def. Br. (Dkt. No. 54) at 7-13)

Plaintiffs and Intervenor-Plaintiff contend that venue is proper because (1) the Taylor-Serrano fight – the subject of the alleged defamatory statements – occurred in this District; and (2) Paul traveled to this District on multiple occasions to promote the fight. (Pltf. Opp. (Dkt. No. 56) at 9-15)

#### A.   Legal Standard

28 U.S.C. § 1391(b) provides that "[a] civil action may be brought" in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

"[S]ection 1391(b)(2) does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred." Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005)  Indeed, Section 1391(b)(2) "'contemplates that venue can be appropriate in more than one district' and 'permits venue in multiple judicial districts as long as a "substantial part" of the underlying events took place in those districts.'" Id. (quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005)) (citations omitted).

The Second Circuit has "caution[ed] district courts to take seriously the adjective 'substantial'" and to "construe the venue statute strictly." Glasbrenner, 417 F.3d at 357 (citing Olberding v. Ill. Cent. R.R., 346 U.S. 338, 340 (1953)).  "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Daniel, 428 F.3d at 432-33 (citing Glasbrenner, 417 F.3d at 357). "When material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial, but when a close nexus is lacking, so too is the substantiality necessary to support venue." Id. at 433.  A court should also focus on "the relevant activities of the defendant, not the plaintiff," because "'the purpose of statutorily defined venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial.'" Micromem Techs., Inc. v. Dreifus Assocs. Ltd., No. 14-CV-9145 (LAK), 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015) (emphasis in original) (citations omitted) (quoting Daniel, 428 F.3d at 432).

Where a plaintiff relies on Section 1391(b)(2) to defeat a venue challenge, "a two-part inquiry is appropriate." Daniel, 428 F.3d at 432.

> First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether "significant events or omissions material to [those] claim[s] . . . have occurred in the district in question."

Id. (alterations in original) (quoting Glasbrenner, 417 F.3d at 357).

In considering a motion to dismiss based on improper venue, a "[c]ourt 'must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits.'" Rankel v. Kabateck, No. 12 Civ. 216 (VB), 2013 WL 7161687, at *2 (S.D.N.Y. Dec. 9, 2013) (quoting U.S. E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001)). "Courts may consider materials outside the pleadings when deciding a motion to dismiss for improper venue under Rule 12(b)(3)." Brennen v. Phyto-Riker Pharm., Ltd., No. 01 CIV. 11815 (DLC), 2002 WL 1349742, at *1 n.2 (S.D.N.Y. June 20, 2002) (citing New Moon Shipping Co., Ltd. v. Man B & W Diesel AG, 121 F.3d 24, 26 (2d Cir. 1997)).

**B.   Analysis**

Plaintiffs contend that venue is proper in the Southern District of New York under Section § 1391(b)(2). (Pltf. Opp (Dkt. No. 56) at 9-15) Defendant Paul argues that venue is not proper in this District under Section 1391(b)(2) because Plaintiffs cannot demonstrate that "a substantial part of the events or omissions giving rise to the claim" occurred here. (Id. at 8-13)

Plaintiffs' and Interventor-Plaintiff's defamation claims are premised on statements that Paul made during a September 20, 2022 interview with iFL TV that was posted online. (Cmplt. (Dkt. No. 6) ¶¶ 7, 41; Intervenor Cmplt. (Dkt. No. 23) ¶ 7, 46) Paul was in Puerto Rico during the interview that contains the alleged defamatory statements. (Fritz Decl., Ex. C (Paul Dep.) (Dkt. No. 52-3) at 68) And while the Complaint alleges that the alleged defamatory statements were "widely published and disseminated around the world, including in the Southern District of New York," the Complaint does not allege that the statements were

9

published in this District other than through their availability on the internet. (Cmplt. (Dkt. No. 6) ¶ 63) Defendant contends that these facts are not sufficient to establish venue in this District under Section 1391(b)(2). (Def. Br. (Dkt. No. 54) at 8-11)

While "the defendant's act[]" of making the alleged defamatory statements occurred in Puerto Rico, Prospect Cap. Corp. v. Bender, No. 09 CIV. 826 (HB), 2009 WL 4907121, at *3 (S.D.N.Y. Dec. 21, 2009), the statements themselves refer to events that took place in Manhattan – that is, the judging of the Taylor-Serrano fight at Madison Square Garden on April 30, 2022. (Cmplt. (Dkt. No. 6) ¶ 6) The crux of the defamation claims is Paul's allegedly false assertion that Matchroom Boxing "paid money" to Feldman to influence his judging of the Taylor-Serrano fight (as well as the Usyk-Joshua fight in Saudi Arabia). (Id. ¶¶ 6-7) Acknowledging that the alleged defamatory statements were made outside this District, the subject matter of the alleged defamation – Plaintiffs' payment of a bribe, and Plaintiff-Intervenor's receipt of a bribe, in connection with a boxing match at Madison Square Garden – arises directly from events that took place within this District. See Boehner v. Heise, 410 F. Supp. 2d 228, 240 (S.D.N.Y 2006) (finding venue in the Southern District of New York where "the subject of the [allegedly defamatory] letter refers to activities taking place in New York, by a company headquartered in New York, and the action requested in the letter is to be taken in New York," even though "the alleged act of writing the letter at the heart of this lawsuit occurred in Wisconsin").

Moreover, Paul travelled to this District on at least two occasions to promote the Taylor-Serrano fight on behalf of MVP Management. He attended a press conference at Madison Square Garden on February 2, 2022, and then did "a full tour of all New York media that morning" and "[rang] the New York Stock Exchange bell." (Fritz Decl., Ex. D (Palmer

Dep.) (Dkt. No. 52-4) at 26, 30-31; Paul Decl. (Dkt. No. 53) ¶¶ 6-7)  During "fight week," Paul attended an additional press conference, attended the boxers' "weigh in," and attended the fight itself at Madison Square Garden.  (Fritz Decl., Ex. E (Hearn Dep.) (Dkt. No. 52-5) at 11-12)  And Paul attended these events in this District pursuant to his obligations under the Co-Promotion Agreement entered into by MVP Management.  (See, e.g., Dec. 1, 2022 Pltf. Ltr., Ex. B (Jan. 14, 2022 Co-Promotion Agmt.) (Dkt. No. 17-2) § 4.2 ("Jake Paul shall use commercially reasonable efforts to attend all fight week promotional events and the Event. . . .")

Given these circumstances, this Court concludes that "material acts" took place within this District that bear a "close nexus" to Plaintiffs' and Intervenor-Plaintiff's defamation claims, such that venue is proper under Section 1391(b)(2).  Daniel, 428 F.3d at 433.

Greenblatt v. Gluck, 265 F. Supp. 2d 346 (S.D.N.Y. 2003), cited by Defendant (Def Br. (Dkt. No. 54) at 10), is not to the contrary.  In Greenblatt, plaintiff's defamation claim was premised on a letter written by the defendant that was "sent from [the defendant's] office in New Jersey to [the plaintiff's] home in New Jersey."  The letter copied "persons or entities [who] all appear to reside in New Jersey," and "urg[ed] [plaintiff] to withdraw a complaint filed in New Jersey state court."  Id. at 349-50.  The court found venue improper in the Southern District of New York because "[t]he only potential contact with New York is that [plaintiff] claims his New York business was somehow peripherally affected by the alleged torts."  Id. at 352.

The facts here are not comparable to those in Greenblatt.  The subject matter of the defamation claim – Feldman's allegedly corrupt judging of the Taylor-Serrano fight – took place in Manhattan, and Paul travelled to Manhattan at least twice to promote that fight.

11

This Court concludes that venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2). Accordingly, Defendant's motion to dismiss for improper venue is denied.

## II. PERSONAL JURISDICTION

Defendant argues that this Court lacks personal jurisdiction over him under N.Y. C.P.L.R. § 302(a)(1), which is the basis for personal jurisdiction cited in the Complaint. (Def. Br. (Dkt. No. 54) at 13-16; see Cmplt. (Dkt. No. 6) ¶ 19) Defendant contends that his contacts with New York are insufficient to confer jurisdiction under Section 302(a)(1).

### A. Legal Standard

To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff "'must make a prima facie showing that jurisdiction exists.'" That showing "'entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited, would suffice to establish jurisdiction.'" Charles Schwab Corp. v. Bank of America Corp., 883 F.3d 68, 81 (2d Cir. 2018) (alteration removed) (quoting Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010)).

"On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court may look beyond the four corners of the complaint and consider all pleadings and accompanying affidavits and declarations, while still 'resolving all doubts in [the non-movant's] favor.'" Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 737 n.1 (S.D.N.Y. 2013) (quoting DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001)). Where, as here, "the parties have conducted . . . discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held[,] the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the

12

defendant." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) (citation and quotation mark omitted).

Under New York C.P.L.R. § 302(a)(1), personal jurisdiction is proper over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." "To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007) (brackets in original). Section 302(a)(1) is a "'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467 (1988).

In determining what constitutes a "transaction of business," "the quality of the defendants' New York contacts . . . is the primary consideration." Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (2007). For a defendant's contacts to be "purposeful," the defendant "must commit an act by which it 'purposefully avails itself of the privilege of conducting activities within [New York].'" Paterno v. Laser Spine Inst., 24 N.Y.3d 370, 377 (2014) (brackets in original) (quoting Ehrenfeld v. Bin Mahfouz, 9 N.Y.3d 501, 508 (2007). The "'aris[es] from'" prong of the Section 302(a)(1) analysis requires "'some articulable nexus between the business transacted and the cause of action sued upon.'" Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (quoting McGowan v. Smith, 52 N.Y.2d 268, 272 (1981)).

"In defamation cases, New York courts construe 'transacts any business within the state' more narrowly than in other contexts." Giannetta v. Johnson, No. 20 CIV. 9016 (PAE), 2021 WL 2593305, at *8 (S.D.N.Y. June 24, 2021). "'In other cases, proof of one transaction, or a "single act," in New York is sufficient to invoke [long-arm] jurisdiction. . . . In defamation cases, by contrast, the "single act" of uttering a defamat[ory] [statement], no matter how loudly, is not a "transaction of business" that may provide the foundation for personal jurisdiction.'" Id. (alterations and brackets in original) (quoting Best Van Lines, 490 F.3d at 249–50). "Examples of activities that, without more, do not [establish personal jurisdiction] are: brief visits and phone calls to the state and a donation of cash; sending two allegedly defamatory letters to the state; and . . . writing defamatory material that was posted, at no cost, on a website accessible in New York." Id. (citations omitted).

**B.   Analysis**

Here, Defendant Paul's ties with New York go well beyond "brief visits and phone calls" and "letters to the state." Giannetta, 2021 WL 2593305, at *8.

Through his company, MVP Management, Paul entered into an agreement to promote the Taylor-Serrano fight at Madison Square Garden that later became the subject of Paul's allegedly defamatory statements. (Fritz Decl., Ex. C (Paul Dep.) (Dkt. No. 52-3) at 31-32, 43, 51) The January 14, 2022 Co-Promotion Agreement between MVP Management and Matchroom Boxing obligates Paul, inter alia, to "use commercially reasonable efforts to attend all fight week promotional events and the Event," and to "participate in such other live social media activities relating to the publicity and promotion of the Bout (which may include but shall not be limited to, appearing at a reasonable number of telephone or zoom press conferences, interviews and other promotional activities) as Matchroom may reasonably request." (Dec. 1, 2022 Pltf. Ltr., Ex. B (Jan. 14, 2022 Co-Promotion Agmt.) (Dkt. No. 17-2) §§ 4.1, 4.2)

14

Pursuant to his obligations under the Co-Promotion Agreement, Paul "participated in a press conference in New York for the Taylor-Serrano fight" on February 2, 2022 (Paul Decl. (Dkt. No. 53) ¶¶ 6-7), and during "fight week," Paul attended another "press conference," the "weigh in" of the fighters, and the fight itself on April 30, 2022. (Fritz Decl., Ex. E (Hearn Dep.) (Dkt. No. 52-5) at 11-12)  MVP Management also "receive[d] income" as a result of the fight. (Fritz Decl., Ex. C (Paul Dep.) (Dkt. No. 52-3) at 56)

In sum, Paul's company MVP Management contracted with Matchroom Boxing to promote a boxing match in Manhattan; Paul travelled to Manhattan on at least two occasions to promote the match, staying for several days on the latter occasion; and Paul's company received revenue as a result of his activities in this District.  Moreover, Paul's allegedly defamatory statements relate to the boxing match in Manhattan that he promoted.  These facts are sufficient to demonstrate that Paul "transact[ed] . . . business" in New York under N.Y. C.P.L.R § 302(a)(1) and that the instant defamation claims "aris[e] from" Paul's conduct.

Paul argues, however, that he "did not promote the Taylor-Serrano bout in his personal capacity, but rather as a representative of non-party MVP Management." (Def. Br. (Dkt. No. 54) at 15)  This argument is not persuasive, because New York has "abandon[ed] . . . the fiduciary shield doctrine," and courts may "obtain jurisdiction over a corporate officer or employee based upon his contacts in New York, even if his activities were performed solely in a corporate capacity." Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 983 (S.D.N.Y. 1992); see Kreutter, 71 N.Y.2d at 473 ("[T]he fiduciary shield rule is not available to defeat jurisdiction under the New York long-arm statute. . . .").

Moreover, Talbot v. Johnson Newspaper Corp., 71 N.Y.2d 827 (1988), cited by Defendant (Def. Br. (Dkt. No. 54) at 15), is distinguishable.  In Talbot, defendants were a father

15

and daughter who were "both California residents who conducted no business in New York." Id. at 829. The father wrote two letters to a university in New York that his daughter had previously attended, in which he "describ[ed] his daughter's account of [plaintiff's] behavior" during an incident that occurred at the school. Id. at 828-29. Because the letters were written "[m]ore than two years after [the] daughter's graduation," the New York Court of Appeals found that "there was no showing that – years after termination of [the daughter's] relationship [with the university] – there was the required nexus between the [defendants'] New York 'business' and the present cause of action [for defamation]." Id.

Here, by contrast, Paul made the alleged defamatory statements on September 20, 2022, less than five months after the April 30, 2022 Taylor-Serrano fight. (Cmplt. (Dkt. No. 6) ¶ 6) Moreover, Paul's contacts with New York – entering into a contract to promote a boxing match in New York, and then travelling to New York on multiple occasions to promote that fight – are closer in time and more closely related to the underlying defamation claim than the Talbot defendants' contacts with New York. In sum, Talbot does not support Defendant Paul's argument that this Court lacks personal jurisdiction over him under N.Y. C.P.L.R § 302(a)(1).

For all these reasons, Paul's motion to dismiss for lack of personal jurisdiction will be denied.

### III.     FAILURE TO STATE A CLAIM

Defendant Paul moves to dismiss Matchroom Boxing's defamation claim under Rule 12(b)(6) on the grounds that Matchroom Boxing is "doing business" in New York without authorization under N.Y. Bus. Corp. Law § 1301, and thus cannot "maintain any action or special proceeding in [New York]" under N.Y. Bus. Corp. Law § 1312(a). (Def. Br. (Dkt. No. 54) at 16-17)

16

Matchroom Boxing contends that it is not "doing business" in New York for purposes of N.Y. Bus. Corp. Law § 1312(a). (Pltf. Opp (Dkt. No. 56) at 18-21)

A.   **Legal Standard**

N.Y. Bus. Corp. Law § 1301 provides that "[a] foreign corporation shall not do business in this state until it has been authorized to do so" under the Business Corporation Law. N.Y. Bus. Corp. Law § 1301(a). N.Y. Bus. Corp. Law § 1312 provides that

> [a] foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute, as defined in section eighteen hundred of such law, as well as penalties and interest charges related thereto, accrued against the corporation. This prohibition shall apply to any successor in interest of such foreign corporation.

N.Y. Bus. Corp. Law § 1312(a).

A corporation is "doing business" in New York under these provisions when it is "'engaged in a regular and continuous course of conduct in the State.'" Highfill, Inc. v. Bruce & Iris, Inc., 50 A.D.3d 742, 743 (2d Dep't 2008) (quoting Commodity Ocean Transp. Corp. of New York v. Royce, 221 A.D.2d 406, 407 (2d Dep't 1995)). "A defendant relying upon Business Corporation Law § 1312(a) as a statutory barrier to a plaintiff's lawsuit 'bears the burden of proving that the [plaintiff-corporation's] business activities in New York 'were not just casual or occasional,' but 'so systematic and regular as to manifest continuity of activity in the jurisdiction[.]'" Id. (quoting S & T Bank v. Spectrum Cabinet Sales, Inc., 247 A.D.2d 373, 373 (2d Dep't 1998)). "Absent sufficient evidence to establish that a plaintiff is doing business in this State, 'the presumption is that the plaintiff is doing business in its State of incorporation . . . and not in New York[.]'" Id. at 743-44 (quoting Cadle Co. v. Hoffman, 237 A.D.2d 555, 555 (2d Dep't 1997).

17

"Non-compliance with [N.Y. Bus. Corp. Law § 1312(a)] is an affirmative defense, and a defendant seeking to invoke it bears the burden of establishing that the plaintiff has failed to meet the section's requirements." Fashion Fragrance & Cosms. v. Croddick, No. 02 CV 6294 (WK), 2003 WL 342273, at *7 (S.D.N.Y. Feb. 13, 2003); see Fly Shoes s.r.l. v. Bettye Muller Designs Inc., No. 14 CIV. 10078 LLS, 2015 WL 4092392, at *6 (S.D.N.Y. July 6, 2015) ("Failure to register [under N.Y. Bus. Corp. Law § 1312(a)] is an affirmative defense."); Domino Media, Inc. v. Kranis, 9 F. Supp. 2d 374, 385 (S.D.N.Y. 1998), aff'd, 173 F.3d 843 (2d Cir. 1999) ("Non-compliance with [N.Y. Bus. Corp. Law § 1312(a)] is an affirmative defense. . . .").

"'[A] defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint.'" Michael Grecco Prods., Inc. v. RADesign, Inc., 112 F.4th 144, 149 (2d Cir. 2024) (quoting Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008)). Affirmative defenses "often require[] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss." Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013). "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Michael Grecco Prods., 112 F.4th at 150 (quoting Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015)).

**B.  Analysis**

In attempting to demonstrate that Matchroom Boxing is "doing business" in New York, Defendant cites exclusively to evidence outside of the Complaint, such as deposition testimony taken in the course of jurisdictional discovery. (Def. Br. (Dkt. No. 54) at 17 (citing Fritz Decl., Ex. D (Palmer Dep.) (Dkt. No. 52-4) at 14-23, 33, 39); Def Reply (Dkt. No. 55) at 10-12 (same))  However, this Court may not consider "facts outside of the complaint" in ruling on a Rule 12(b)(6) motion premised on an affirmative defense. Kelly-Brown, 717 F.3d at 308.

18

The Complaint alleges that Matchroom Boxing "is a private limited company organized and existing under the laws of the United Kingdom, with its principal place of business in the United Kingdom" (Cmplt (Dkt. No. 6) ¶ 21), and that Matchroom Boxing promoted a boxing match in New York City – the Taylor-Serrano fight – that took place on April 30, 2022. (Id. ¶ 6) These factual allegations are not adequate to support a finding that Matchroom Boxing has "engaged in a regular and continuous course of conduct" in New York, such that it is "doing business" in the state without authorization under N.Y. Bus. Corp. Law § 1312(a). Highfill, 50 A.D.3d at 743 (citation and quotation marks omitted).

Accordingly, Defendant's Rule 12(b)(6) motion to dismiss premised on N.Y. Bus. Corp. Law § 1312(a) will be denied.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the Complaint is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 51).

Dated: New York, New York
      September 30, 2024

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge